Filed 6/26/26  P. v. Helton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086123 |
| Plaintiff and Respondent, | (Super. Ct. No. SCE427966) |
| v. | |
| ROBERT HELTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michelle Ialeggio, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Robert Helton appeals a judgment of conviction after a jury found him guilty of assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2); count 1); unlawful possession of a firearm by a prohibited person (§ 29800, subd. (a)(1);

_____

1       Further undesignated statutory references are to the Penal Code.

count 2); unlawful possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); count 3); and threatening a public officer (§ 71; count 4). The jury returned true findings on allegations that Helton personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of count 1. Further, Helton admitted two prior strikes (§§ 667, subd. (b), 1192.7, subd. (c)) and two serious felony priors (§ 667, subd. (a)(1)).

The trial court struck the prior strikes and serious felony priors, and sentenced Helton to an aggregate prison term of 10 years and four months, which it calculated as follows: the low term of two years for count 1, plus four years for the firearm enhancement, plus three years for the great-bodily-injury enhancement, plus eight months consecutive (one-third the midterm) for count 2, plus eight months stayed (one-third the midterm) for count 3, plus eight months consecutive (one-third the midterm) for count 4. The court awarded Helton 251 credits, including 219 actual credits and 32 conduct credits. It also imposed a $10,000 restitution fine (§ 1202.4, subd. (b)), imposed and stayed a $10,000 parole/post-release community supervision revocation restitution fine (§ 1202.45), and ordered Helton to pay a $160 court security fee (§ 1465.8), a $120 criminal conviction assessment fee (Gov. Code, § 70373), and victim restitution in an amount to be determined (§ 1202.4, subd. (f)).

Helton's court-appointed appellate counsel filed a brief raising no arguable issues for reversal, but seeking our independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We informed Helton of his right to file a supplemental brief, but he did not respond. Based on our independent

2

review of the record, we find no reasonably arguable appellate issues. Therefore, we affirm the judgment of conviction.

## BACKGROUND

Shortly after 6:00 p.m., two men and a woman drove a gray sedan to a fire station in the Lake Morena area of Campo and knocked on the station door in search of medical assistance for one of the men, E.R., who was suffering from a gunshot wound to his left arm. A fire engine operator opened the apparatus bay and started treating E.R.'s injury.

The woman tried telling the operator about the shooting, but E.R. was reluctant to share information and repeatedly told the woman to stop talking. Despite E.R.'s reluctance, he disclosed certain information about the shooting to the operator. He said he was at a house with other people, someone shot him point-blank in the arm, and he and his companions drove to the fire station rather than calling for medical assistance. He stated the house was down a common road and near a green gate in an area of Campo called Hauser Canyon.

Two deputy sheriffs responded to the fire station. When they arrived, medics were treating E.R., who appeared sweaty, nervous, and distressed. E.R. repeatedly told one of the deputies that he did not know the name of the shooter and did not want to say who shot him. However, E.R. said the shooter was a white man who drove a pickup truck, and he shot E.R. after falsely accusing E.R. of taking something from him.

While the deputies were at the station, one of them received a phone call from V.L., a bystander to the shooting. V.L. provided the deputy with a license plate number for a vehicle the shooter had driven that evening. A records check revealed the vehicle was a white Toyota Tacoma registered to

3

Helton's stepfather, Roy Helton, Jr. (Roy).[2]  Helton lived with Roy and other family members in El Cajon.

While the deputies were still at the station, they received information linking the shooting to an address in Hauser Canyon.  The deputies went to the address to investigate and announced their presence, but no one came out of the residence.  The deputies canvassed the yard and encountered a man sleeping in a car on the property.  The man told the deputies he heard an argument earlier that night, but he provided no further useful information.  During the deputies' canvas of the yard, they observed a small area of blood spatter and recovered a .22-caliber shell casing near a dirt road next to the residence.

A few weeks later, detectives went to Roy's residence in El Cajon.  Helton and the Toyota Tacoma were there when the detectives arrived.  Helton seemed agitated and repeatedly shouted and interrupted the detectives.  At one point, a detective asked Helton if he ever went to Campo.  Helton said he occasionally went to the area to visit a family member who lives on a Native American reservation in Campo, but he had not been out there for several months.

Thereafter, investigators obtained video surveillance footage from a Native American-owned casino in Campo.  Footage from the day of the shooting showed a white Toyota Tacoma arriving at the casino at 5:17 p.m., and a man wearing a bright red t-shirt with white lettering and dark-colored pants exiting the truck, entering and exiting the casino, getting back into the truck, and then driving in the direction of Lake Morena.

---

[2]     Because Roy Helton, Jr. shares the same surname as the appellant, we refer to him as Roy for the sake of clarity.  We intend no disrespect.

Detectives subsequently executed a search warrant at Roy's residence. They searched Helton's room and found a red t-shirt with white lettering and dark painter-style pants that matched the clothing worn by the man on the casino surveillance footage. They did not find guns or ammunition in Helton's room. However, they searched Roy's bedroom and found a gun safe containing several firearms. They also found an additional unlocked 9mm handgun and three containers of ammunition in Roy's bedroom.

That same day, officers executed a traffic stop of the Toyota Tacoma. Helton was driving and his teenaged niece was a passenger. After officers advised Helton that he was under arrest, he became agitated and said he needed to get his niece to school and call his family. He used profanity and repeatedly threatened to kill the officers. A physical struggle ensued, and officers ultimately restrained Helton on the ground.

V.L., the bystander who gave the license plate number to the deputy sheriff, testified at trial. V.L. is a landscaper who was removing dead trees from a property in Campo on the day of the shooting. According to V.L., a gray sedan parked near his worksite that day, and four occupants (two men and two women) emerged. Shortly after, a white Toyota Tacoma parked close to the gray sedan, and a white man exited the truck. The man who exited the truck began shouting and arguing with the men from the sedan. The man from the truck kept saying the other men knew where his "shit" was, and they were "the only two" who knew where it was. The men from the sedan replied that they did not know where the other man's "shit" was.

After a few minutes, the man from the truck said he would "be back," and warned the others they "better find [his] shit." The man went back to his truck, but then said, "You know what, fuck it," pulled out a firearm, and walked back to the others. The man from the truck pointed the firearm at

5

one of the other men, who grabbed for the firearm. The two men struggled for a few seconds, and a gunshot went off. The man from the sedan said, "You fucking shot me." The man from the truck replied, "I didn't fucking shoot you," and claimed, "It just grazed you." The injured man got back into the gray sedan with his companions and drove away. The shooter got back into his truck and drove off soon afterwards.

V.L. recorded the truck's license plate number as it drove away. He also identified Helton as the shooter from a lineup of suspects.

DISCUSSION

Appellate counsel has filed a *Wende* brief indicating that counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738.

Counsel identified nine potential issues to assist us in our review: (1) whether the trial court had a sua sponte duty to instruct on unanimity as to counts 2 and 3; (2) whether the court erred by denying Helton's motions to discharge and replace appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118; (3) whether the court erred by denying Helton's request to retain counsel; (4) whether the court erred by admitting the non-testifying victim's statement at trial; (5) whether the court erred by not giving a unanimity instruction on count 4; (6) whether the court erred by failing to dismiss all but one of the enhancements under section 1385, subdivision (c)(2)(B); (7) whether the court abused its discretion when it imposed the low term for count 1, but the midterm on the firearm enhancement; (8) if the People were relying on the shooting to prove counts 2 and 3, whether counsel provided ineffective assistance of counsel by not objecting to the relevance of the firearms and ammunition found in Roy's room; and (9) whether a remand is

6

necessary for the court to hold a hearing on Helton's ability to pay the fines and fees in light of *People v. Kopp* (2025) 19 Cal.5th 1.

We have reviewed the entire record as required by *Wende* and *Anders*, and considered the potential issues identified by Helton's counsel. We conclude there is no arguable issue that would result in a reversal or modification of the judgment. We therefore affirm the judgment. Competent counsel has represented Helton in this appeal.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.